# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ROBERT WILLIAMS,
      Petitioner,

Case No. 1:12-cv-56

vs.

Bertelsman, J.
Litkovitz, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
      Respondent.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's return of writ with exhibits, including a copy of the trial transcript. (Docs. 1, 9).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

In December 2008, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with four counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2), with a firearm specification attached to three of the counts (Counts Two through Four). (Doc. 9, Ex. 1). The indictment was later amended to correct the date when the offenses charged in Counts Two and Three allegedly occurred. (*See id.*). Specifically, in Count One of the amended indictment, petitioner was charged with a rape occurring on February 14, 2004 against a victim identified as "N.M." The second and third counts stemmed from an incident occurring on June 9, 2004, involving a second victim identified as "L.F." Finally, the fourth count charged petitioner with an offense that occurred on or about December 1, 2008, against a third victim

identified as "T.W." (See id.). The Ohio Court of Appeals, First Appellate District, has provided

the following summary of the facts that led to petitioner's indictment based on evidence

presented at petitioner's subsequent trial:[1]

> Williams was charged with raping three women. The first of these alleged victims was Nina Miller.
>
> Williams and Miller became acquainted when Miller worked at the customer service desk at a shopping mall. One evening, they went out for drinks, and Miller drove Williams back to his apartment. Miller testified that Williams had invited her into the apartment with the promise that he would lend her money.
>
> She testified that, once inside, Williams had grabbed her around the neck, had her thrown to the floor, and had vaginally raped her. Photographs taken soon after the assault revealed bruising on her neck and thigh.
>
> The second victim was Lisa Flowers. Williams and Flowers had been acquainted for a short time when Williams invited her to his apartment. Flowers testified that, after she had been at the apartment for some time, Williams had ordered her to take her clothes off and had threatened to shoot her if she did not comply. She stated that, after she had removed her clothing, Williams had performed oral sex on her and had digitally penetrated her.
>
> The third victim was Tanea White. Williams met White at a bus stop, and the two struck up a conversation. Williams told her that he knew a photographer who would pay her to model.
>
> Williams invited White to his home with the promise that the photographer would be there. White testified that, after she had gotten to the residence, Williams had ordered her to take her clothes off and had told her that he would shoot her if she did not do so. According to White, Williams then forced her legs open and had vaginally raped her.
>
> Forensic evidence revealed the presence of Williams's semen on both Miller and White. On the stand, Williams conceded that he had engaged in vaginal intercourse with Miller and White and that he had digitally penetrated Flowers. But he contended that he had given money to the women for sex and that the sexual activity was therefore consensual. He denied engaging in oral sex with Flowers.

---

[1] The Ohio appellate court summarized the facts in a decision issued on June 9, 2010, affirming the trial court's judgment of conviction and sentence. 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has not presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, those findings are presumed to be correct. See McAdoo v. Elo, 365 F.3d 487, 493-94 (6th Cir. 2004).

(*Id.*, Ex. 9, pp. 1-2).

Prior to trial, petitioner's counsel filed a suggestion of incompetence and a plea of not

guilty by reason of insanity on petitioner's behalf. (*Id.*, Exs. 2-3). On May 5, 2009, the trial

court ordered that petitioner be examined at the Court Clinic Forensic Services' Psychiatric

Center for the purpose of assessing his competency to stand trial. (*Id.*, Ex. 4). After receiving

the report of the doctor who conducted petitioner's psychiatric evaluation, the trial court entered

an order on June 15, 2009, finding petitioner "to be competent for the purpose of standing trial."

(*Id.*, Ex. 5).

The matter proceeded to trial before a jury, which found petitioner guilty of the rape

charges. However, the jury acquitted petitioner on the firearm specification attached to three of

the counts. After a sentencing hearing, the trial court issued a Judgment Entry on September 17,

2009, sentencing petitioner to consecutive ten (10) year terms of imprisonment for each offense,

or an aggregate prison term of forty (40) years. (*Id.*, Ex. 6).

### State Appeal Proceedings

With the assistance of new counsel for appeal purposes, petitioner timely appealed to the

Ohio Court of Appeals, First Appellate District. (Doc. 9, Ex. 7). Petitioner presented six

assignments of error for the court's consideration:

> 1. The trial court erred to the prejudice of the Defendant-Appellant by not
> granting the Rule 29 motion as there was insufficient evidence to convict.
>
> 2. The trial court erred to the prejudice of the Defendant/Appellant because the
> verdict was against the manifest weight of the evidence.
>
> 3. The trial court erred in sentencing the Defendant to allied offenses of similar
> import.
>
> 4. The Defendant-Appellant was denied due process of law and subject to cruel
> and unusual punishment when the court sentenced him to a 40-year sentence.
>
> 5. The trial court abused its discretion in imposing consecutive, maximum

sentences.

      6. The defendant was denied effective assistance of counsel.

(*Id.*). Petitioner specifically claimed in his sixth assignment of error that "[w]here defense counsel says at sentencing, after a lengthy jury trial, that he just found out his client has mental issues, the defendant receives ineffective assistance." (*Id.*).

      On June 9, 2010, the Ohio Court of Appeals issued a Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment. (*Id.*, Ex. 9).

      Petitioner did not perfect a timely appeal to the Ohio Supreme Court. However, the Ohio Supreme Court granted petitioner leave to file a *pro se* delayed appeal. (*See id.*, Brief, pp. 4-5 & Exs. 10-11). In his memorandum in support of jurisdiction, petitioner asserted the same claims that he had presented as assignments of error on direct appeal to the Ohio Court of Appeals. (*See id.*, Ex. 12). On January 19, 2011, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 13).

### State Post-Conviction Proceedings

      On May 4, 2010, during the pendency of petitioner's appeal to the Ohio Court of Appeals, petitioner, who was assisted by counsel from the Ohio Public Defender's Office, filed a petition for post-conviction relief with the trial court. (Doc. 9, Ex. 14). Petitioner claimed in the petition that his trial counsel was ineffective for failing to call a certain witness, who would have provided testimony in favor of the defense with respect to the rape offense charged in Count Four of the indictment. (*See id.*). A hearing was held on August 6, 2010, and on August 30, 2010, the trial court issued findings of fact and conclusions of law denying the post-conviction petition. (*Id.*, Ex. 17).

      Prior to receiving the trial court's ruling denying post-conviction relief, another attorney

from the Ohio Public Defender's Office filed a motion on August 31, 2010, requesting the

reopening of the hearing on the post-conviction petition, in which petitioner's counsel had

"appeared by telephone" and petitioner was not permitted to be present. (*Id.*, Ex. 18). Counsel

claimed in the motion that petitioner was denied the opportunity to present evidence in support

of his petition because the attorney who represented petitioner at the hearing "reasonably

believed" that the hearing was not on the merits of the petition, but rather on a pending motion to

amend the petition. (*Id.*, p. 5). Counsel stated that had the attorney "known that the August 6,

2010 hearing was regarding the merits of Mr. Williams's postconviction petition, he would have

appeared in person, subpoenaed witnesses, and made a formal request for a warrant from th[e]

Court to ensure that Mr. Williams would physically appear at the hearing as statutorily required"

by Ohio Rev. Code § 2953.22. (*Id.*). Thereafter, on September 20, 2010, counsel filed a motion

for relief from judgment, in which he incorporated his pending motion for reopening of the

August 6, 2010 hearing. (*Id.*, Ex. 20). On November 29, 2010, the trial court issued an entry

summarily overruling petitioner's requests, which the court referred to as "Motion

**Memorandum In Opposition To Motion To Reopen.**" (*Id.*, Ex. 21) (emphasis in original).

 In the meantime, on September 28, 2010, counsel from the Ohio Public Defender's

Office also filed a timely notice of appeal on petitioner's behalf to the Ohio Court of Appeals,

First Appellate District, from the trial court's August 30, 2010 entry denying post-conviction

relief. (*Id.*, Ex. 22). In the appellate brief filed by counsel, petitioner claimed as the sole

assignment of error that the trial court abused its discretion and violated due process by denying

the post-conviction petition "without a meaningful hearing." (*Id.*, Ex. 23). Apparently, during

the pendency of that appeal, it was brought to the appellate court's attention that petitioner's

post-conviction petition had been filed with the trial court "one day late." (*See id.*, Ex. 25).

Petitioner's counsel, therefore, filed a motion to stay the appeal proceedings and to remand the

matter to the trial court for a factual determination of the date on which the original post-conviction petition was received by the Hamilton County Clerk of Courts. (*Id.*).

On May 3, 2011, the Ohio Court of Appeals summarily overruled petitioner's motion to stay the appellate proceedings and remand to the trial court. (*Id.*, Ex. 26). Thereafter, on June 8, 2011, the Ohio Court of Appeals issued a Judgment Entry overruling petitioner's sole assignment of error on the ground that the trial court "had no jurisdiction to entertain the petition," which failed to "satisfy either the time restrictions of R.C. 2953.21(A)(2) or the jurisdictional requirements of R.C. 2953.23." (*Id.*, Ex. 27). In so holding, the court stated:

> Because the common pleas court had no jurisdiction to entertain Williams's postconviction petition claim, his petition was subject to dismissal without an evidentiary hearing. Accordingly, upon the authority of App.R. 12(A)(1)(a), we modify the judgment appealed from to reflect a dismissal of the petition. And we affirm the judgment as modified.

(*Id.*, p. 2) (footnotes with citations omitted).

Respondent states that petitioner did not pursue an appeal to the Ohio Supreme Court from the appellate court's decision affirming the denial of post-conviction relief. (*Id.*, Brief, p. 6).

### Rule 26(B) Application To Reopen Appeal

On September 8, 2010, during the pendency of both the state post-conviction proceedings and petitioner's appeal to the Ohio Supreme Court from the Ohio Court of Appeals' direct appeal decision, petitioner filed a timely *pro se* application to reopen his appeal with the Ohio Court of Appeals, First Appellate District. (Doc. 9, Ex. 28). In the application filed pursuant to Ohio R. App. P. 26(B), petitioner claimed his appellate counsel was ineffective for failing to raise certain ineffective assistance of trial counsel claims, including a claim challenging trial counsel's failure to file a motion for severance of the charges. (*Id.*). On October 13, 2010, the Ohio Court of Appeals summarily overruled the reopening application on the ground that "appellant has failed

6

to demonstrate a genuine issue that he was deprived of the effective assistance of counsel on appeal." (*Id.*, Ex. 30).

Petitioner timely appealed to the Ohio Supreme Court. (*See id.*, Ex. 31). He asserted two propositions of law in his memorandum in support of jurisdiction, including the following claim:

> Defendant-Appellant was deprived of the effective assistance of counsel at trial and on appeal where a motion to sever the charges was not pursued at trial and cited as a deficient performance on appeal in violation of Appellant's rights under the Sixth & Fourteenth Amendment[s] to the U.S. Constitution.

(*Id.*, Ex. 32). On January 19, 2011, the Ohio Supreme Court summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 33).

### Federal Habeas Corpus

Petitioner next initiated the instant federal habeas corpus action in January 2012. In the petition, he presents the following claims for relief:

> **Ground One:** The State failed to present enough evidence to prove all statutory elements of offense charged and therefore the conviction is against the manifest weight and sufficiency of the evidence.
>
> **Ground Two:** The 4 counts involved in this conviction are allied offenses of similar import that should have been merged at sentencing according to Ohio law precluding multiple consecutive sentences and 40 year sentence was excessive.
>
> **Ground Three:** Trial counsel provided ineffective assistance at trial when he later admits at sentencing phase that he just found out that his client has mental issues which should have been addressed prior to, or during trial.
>
> **Ground Four:** Appellate counsel was ineffective for failing to recognize and raise trial counsel's ineffectiveness for failing to move the Court to sever count 4's 2008 offense involving one victim from count[s] 1, 2, & 3's 2004 offenses involving two other victims thereby allowing the prosecution to "bootstrap" unrelated incidents and prejudice defendant.
>
> **Ground Five:** INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL
>
> > Trial counsel failed to investigate and present known, exculpatory witness whose testimony would most likely have altered the outcome of the trial in the Petitioner's favor.

(Doc. 1, pp. 4, 6, 9, 11, 14).

Respondent has filed a return of writ addressing each of petitioner's claims. (Doc. 9). Respondent argues in part that the claim alleged in Ground Five of the petition "is non-cognizable and is waived." (*Id.*, Brief, pp. 11-12). In addition, respondent contends that petitioner has not demonstrated he is entitled to relief based on the merits of the claims alleged in Grounds One through Four of the petition. (*Id.*, pp. 13-36).

## II. OPINION

### A. Petitioner Procedurally Defaulted And Has Waived The Ineffective Assistance Of Counsel Claim Alleged In Ground Five Of The Petition

In Ground Five of the petition, petitioner claims that his trial counsel was ineffective for failing "to investigate and present known, exculpatory witness." (Doc. 1, p. 14). In the return of writ, respondent mistakenly cited petitioner's response to a procedural question in the petition as constituting his fifth ground for relief. (*See* Doc. 9, Brief, p. 11; *see also* Doc. 1, pp. 14-15).[2] Respondent has contended that such a claim is not cognizable in this federal habeas proceeding and, in any event, is waived due to petitioner's procedural default in the state courts. (Doc. 9, Brief, pp. 11-12). Although misdirected, respondent's waiver argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to

---

[2] Specifically, in identifying the claim alleged in Ground Five, respondent quoted the following response to a question asking petitioner to identify the grounds that were not presented to the state's highest court and to give reasons for not presenting such grounds to the state's highest court: "Ground Five. An appeal of petition for post conviction relief could not be perfected to the state's highest court after intermediate court refused to accept direct appeal on jurisdictional grounds after discovering petition had been filed late by appointed counsel (OH Pub. Defender) beyond the statutory time limit thereby divesting trial court of jurisdiction to rule on matter in first place." (Doc. 1, p. 15; *see also* Doc. 9, p. 11).

the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady,* 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to

9

bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). In those cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991). Moreover, in *Harris,* the Supreme Court explained that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane,* 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The Court stated: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n.9.

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410

10

n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw,* 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also Johnson v. Bradshaw,* 493 F. App'x 666, 669 (6th Cir. Aug. 9, 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner,* 622 F.3d at 495 (citing *Maupin,* 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner presented the ineffective assistance of trial counsel claim alleged in Ground Five to the state courts only in the post-conviction proceedings. However, petitioner committed two procedural defaults in those proceedings. First, he failed to file a timely petition, which was clearly and expressly relied on by the Ohio Court of Appeals as the basis for affirming the trial court's judgment denying post-conviction relief. (*See* Doc. 9, Ex. 27). The procedural bar to review relied on by the last state court to issue a reasoned decision in the post-

conviction matter constitutes an adequate ground for that court's decision. It is well-settled in Ohio that post-conviction petitions must be filed within 180 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal." *See* Ohio Rev. Code § 2953.21(A)(2); *cf. Norris v. Warden, Oakwood Corr. Facility*, No. 1:10cv764, 2011 WL 5888189, at *7 (S.D. Ohio Oct. 21, 2011) (Litkovitz, M.J.), *adopted*, 2011 WL 5878389 (S.D. Ohio Nov. 23, 2011) (Dlott, J.). Petitioner apparently missed the filing deadline by one day. (*See* Doc. 9, Ex. 27). In any event, petitioner committed a second procedural default because he did not pursue an appeal to the Ohio Supreme Court from the appellate court's decision, and is not permitted at this late juncture to seek a delayed appeal to the state's highest court in the matter involving a petition for post-conviction relief. *See* Ohio S.Ct. Prac. R. 7.01(A)(4)(c); *cf. Norris, supra*, 2011 WL 5888189, at *7; *see also Wright v. Bell*, 619 F.3d 586, 603 (6th Cir. 2010) ("A petitioner's failure to appeal a state court decision denying relief represents a procedural default resulting in waiver of the claim."), *cert. denied*, 132 S.Ct. 127 (2011).

Because petitioner failed to comply with a well-established state procedural rule, which was relied on by the Ohio Court of Appeals in affirming the denial of post-conviction relief, and because petitioner did not pursue an appeal to the Ohio Supreme Court in the post-conviction matter, the state's highest court was not provided an opportunity to consider the merits of the claim asserted as petitioner's fifth ground for federal habeas relief. Therefore, the ineffective assistance of counsel claim alleged in Ground Five is procedurally defaulted and barred from review by this Court unless petitioner can demonstrate cause for and prejudice from his procedural defaults, "or demonstrate that failure to consider the defaulted claim[] will result in a fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750.

Petitioner has not demonstrated cause for his procedural defaults in this case. Petitioner has only argued that he was unable to perfect an appeal to the Ohio Supreme Court because the

12

Ohio Court of Appeals had "refused to accept direct appeal on jurisdictional grounds after discovering the petition [for post-conviction relief] had been filed late." (Doc. 1, p. 11). Contrary to his contention, petitioner was not prevented from filing a further appeal to the state's highest court, where he could have asserted arguments challenging both the Ohio Court of Appeals' decision on the procedural time-bar issue and the trial court's denial of post-conviction relief based on the merits of petitioner's ineffective assistance of counsel claim. Petitioner essentially contends that he did not pursue the available remedy of a timely appeal to the Ohio Supreme Court because it would have been futile to do so. However, it has long been well-settled under Supreme Court precedents that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982) (internal citation and quotation omitted)); *see also Cvijetinovic v. Eberlin*, 617 F.3d 833, 839 (6th Cir. 2010) (and cases cited therein), *cert. denied*, 131 S.Ct. 1518 (2011).

Finally, petitioner has not demonstrated that failure to consider the claim alleged in Ground Five will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Although petitioner has challenged the weight and sufficiency of evidence supporting his rape convictions, actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell*, 547 U.S. 518, 538 (2006); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley*, 523 U.S. at 623); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011).

To establish a credible claim of actual innocence sufficient to overcome a procedural bar to review, the petitioner must "establish in light of new evidence, 'it is more likely than not that

13

no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327); *cf. Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008). The standard is "demanding and permits review only in the 'extraordinary' case." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327). To be credible, a claim of actual innocence must be based on "new reliable evidence . . . that was not presented at trial." *House*, 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 324); *see also Calderon v. Thompson*, 523 U.S. 538, 559 (1998). *Cf. Perkins v. McQuiggin*, 670 F.3d 665, 671 (6th Cir.) ("claims of actual innocence must be based on new reliable evidence") (internal citation and quotation omitted), *cert. granted*, 133 S.Ct. 527 (2012).[3]

Petitioner has not established a credible claim of actual innocence in this case. In his state post-conviction petition, petitioner claimed that his trial counsel should have called Carolyn Pritchett as a defense witness because she would have corroborated petitioner's testimony that he had engaged in consensual sex for money with the third victim, Tanea White. (*See* Doc. 9, Ex. 14). Petitioner attached a copy of a letter dated December 2, 2009 from Pritchett to the trial judge as an exhibit to the petition, and later submitted Pritchett's affidavit in a subsequent pleading. (*See id.*, Exs. 14-15). In her letter to the trial judge, Pritchett stated that she was a friend of petitioner's family. (*Id.*, Ex. 14, Attachment A). She also stated in her affidavit that she was a friend of petitioner, whom she met "when working with the attendance of his school." (*Id.*, Ex. 15, Attachment 1). Pritchett averred that on November 22, 2008, prior to the date of the charged rape offense, she met White at the home of petitioner's aunt, where petitioner also apparently resided. (*See id.*, Ex. 14, Attachment A & Ex. 15, Attachment 1). Pritchett stated that she asked petitioner about a "peculiar scent" or "particular odor" that she had noticed emanating

---

[3] It is noted that the Supreme Court granted certiorari in *Perkins* to resolve a separate issue decided in the habeas petitioner's favor by the Sixth Circuit as to whether a showing of some "extraordinary circumstance" and "reasonable diligence" are "prerequisite[s] for equitably tolling AEDPA's statute of limitations based on a credible claim of actual innocence." *See Perkins*, 670 F.3d at 672-76.

from petitioner's "breath;" petitioner responded that he and White "had just engaged in sexual intercourse" and that "he had paid Ms. White $300 for her services." (*See id.*). Pritchett said that "Ms. White was within earshot when this dialogue took place, and did not react to Mr. Williams' statements." (*Id.*, Ex. 15, Attachment 1).

Pritchett's testimony, which was not presented at petitioner's trial, does not establish a colorable claim of actual innocence. First, the undersigned has concerns about the reliability of the proposed testimony given by a personal friend of petitioner and his family.

Second, and most importantly, the undersigned is convinced upon review of the record that even if Pritchett's testimony had been introduced at trial, it is unlikely that "no reasonable juror would have found [petitioner] guilty beyond a reasonable doubt." *See House,* 547 U.S. at 536-37. Tanea White's detailed account of the events leading up to, during and immediately after the rape, as well as her testimony in response to questions posed on both direct and cross examination, was consistent, convincing and compelling. (*See* Doc. 9, Trial Tr. 441-80, 489-518). Indeed, as discussed later in addressing the sufficiency of evidence claim alleged in Ground One of the petition, it appears that White broke down at one point when asked to recall the specific details of the rape, which led the court to call a short recess to give her a "little break." (*See id.*, Trial Tr. 465-66). It further appears from testimony presented at trial that as soon as petitioner left her alone after the offense took place, White got dressed, collected her belongings, exited petitioner's house, and immediately called her best friend, Mattie Jefferson, upset and crying, as well as the police to report that she had been raped. (*See id.*, Trial Tr. 400-05, 468-71, 523-25). White's version of events was corroborated not only by the two other victims, who testified regarding similar offenses committed by petitioner, but also by Jefferson, who communicated with White by phone throughout the day that the charged rape offense occurred and also corroborated White's testimony that White believed petitioner was only going

15

to take photographs of her as part of a modeling job; the nurse who examined White immediately after the offense and noted White's distraught demeanor; the recorded 911 call that White made to the police after she exited petitioner's house; video evidence, which supported White's account of the events leading up to the rape offense; and records obtained from White's cell phone, Jefferson's cell phone, petitioner's cell phone, and the land-line phone number of the residence where the offense occurred, which supported White's account of the sequence of events that occurred at the time of the rape and immediately thereafter. (*See id.*, Trial Tr. 400-04, 521-25, 544, 604-14). Finally, White's grandmother, who was called as a defense witness, provided no testimony in support of the defense position and in fact bolstered the State's position by testifying that White "changed a whole lot" after the incident, refusing to talk about what happened and withdrawing from people. (*Id.*, Trial Tr. 715). In contrast, petitioner's account in support of the defense theory that he and White had engaged in consensual sexual activity, including the explanations he gave to get around the incriminatory phone-record and video evidence corroborating White's testimony, stretch credulity. (*See id.*, Trial Tr. 677-82). In the face of the overwhelming evidence of guilt presented at trial, petitioner is, therefore, unable to prevail on any argument that the procedural bar to review should be excused in this case under the actual innocence exception.

Accordingly, in sum, the undersigned concludes that the ineffective assistance of trial counsel claim alleged in Ground Five of the petition is procedurally defaulted. Because petitioner has not demonstrated cause for his procedural defaults in the state courts, or that a fundamental miscarriage of justice will occur if the ineffective assistance of counsel claim is not considered by this Court, the ground for relief is waived. Therefore, Ground Five is subject to dismissal with prejudice because it is procedurally barred from review in this federal habeas proceeding.

**B. Petitioner Has Not Demonstrated That He Is Entitled To Relief Based On The Merits Of The Claims Alleged In Grounds One Through Four Of The Petition**

In Ground One of the petition, petitioner challenges the weight and sufficiency of the evidence supporting his rape convictions. (Doc. 1, pp. 4-5). In Ground Two, petitioner challenges his 40-year sentence on the grounds that (1) the sentence is excessive and constitutes cruel and unusual punishment under the Eighth Amendment; and (2) his convictions should have been merged for sentencing purposes as allied offenses of similar import in accordance with state law, which was enacted to ensure protection of rights guaranteed by the Fifth Amendment's Double Jeopardy Clause. (*Id.*, pp. 6-7). In Ground Three, petitioner contends that his trial counsel provided ineffective assistance by belatedly recognizing petitioner's "mental issues," which should have been pursued for trial and mitigation of sentence purposes. (*Id.*, pp. 9-10). Finally, petitioner argues in Ground Four that his appellate counsel provided ineffective assistance by failing to assert as an assignment of error on direct appeal that petitioner's trial counsel was ineffective for failing to request a severance of the rape charges at trial. (*Id.*, pp. 11-12). The four grounds for relief were fairly presented to both the Ohio Court of Appeals and the Ohio Supreme Court in the appeal/reopening proceedings. The claims, therefore, are subject to review on the merits.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by plaintiff to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied,* 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte:*

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* _ U.S. _, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable.* . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* _ U.S. _, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the

"restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'* *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade*, 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and

interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied*, 132 S.Ct. 127 (2011)).  The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams*, 529 U.S. at 412).

The Court turns now to address each ground for relief in accordance with the standard of review enunciated in 28 U.S.C. § 2244(d), as interpreted by the Supreme Court.

## 1.  Ground One:  Sufficiency of the Evidence.

In Ground One, petitioner challenges both the weight and sufficiency of the evidence that was introduced against him at trial.  This Court's review, however, is limited to only petitioner's claim challenging the sufficiency of the evidence.

In this federal habeas case, the Court has jurisdiction to review petitioner's claims only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran*, __ U.S. __, 131 S.Ct. 13, 16 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Because habeas review is limited to claims implicating federal concerns, this Court lacks jurisdiction to consider petitioner's claim challenging the weight of the evidence because it is based on a state-law concept that is "both quantitatively and qualitatively different" from federal due process principles.  *See Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v.*

*Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997);[4] *Nash v. Eberlin*, 258 F. App'x 761, 765 & n.4

(6th Cir. 2007); *see also Richardson v. Smith,* No. 3:11cv1217, 2012 WL 5903986, at *17 (N.D.

Ohio Oct. 30, 2012) (Report & Recommendation)  (quoting *Tibbs*, 457 U.S. at 41-47) ("claim

that a conviction is against the manifest weight of the evidence is not cognizable in federal

habeas corpus review" because it is "derived from purely state law whereby the state appellate

court sits as a 'thirteenth juror and disagrees with fact finder's resolution of conflicting

testimony' and finds that the 'jury clearly lost its way and created such a miscarriage of justice

that the conviction must be reversed and a new trial ordered'"), *adopted*, 2012 WL 5903896

(N.D. Ohio Nov. 26, 2012).  Only petitioner's sufficiency of evidence claim presents a federal

due process issue, which is subject to review by this Court.

In this case, the Ohio Court of Appeals was the only state court to issue a reasoned

decision addressing the merits of petitioner's assignment of error challenging the sufficiency of

the evidence.  The court rejected petitioner's claim, reasoning in pertinent part as follows:

> In the review of the sufficiency of the evidence to support a conviction, the
> relevant inquiry for the appellate court "is whether, after viewing the evidence in
> the light most favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable doubt.". . .

> The rape statute, R.C. 2907.02(A)(2), provides that "[n]o person shall engage in
> sexual conduct with another when the offender purposely compels the other
> person to submit by force or threat of force." R.C. 2907.01(A) defines "sexual
> conduct" as "vaginal intercourse between a male and female; anal intercourse,
> fellatio, and cunnilingus between persons regardless of sex; and, without privilege
> to do so, the insertion, however slight, of any part of the body *** into the vaginal
> or anal opening of another."

> In this case, the convictions were in accordance with the evidence.  Miller and
> White testified that Williams had forced them to submit to vaginal intercourse.
> Flowers testified that he had forcibly performed oral sex on her and that he had
> digitally penetrated her by force.  Forensic and photographic evidence
> corroborated the women's testimony.  Although Williams contended that the
> sexual conduct was consensual, we cannot say that the jury lost its way in finding

---

[4]It is noted that *Thompkins* was superseded on other grounds by state constitutional amendment allowing
for state supreme court review of manifest-weight-of-the-evidence claims in death penalty cases. *See State v. Smith,*
684 N.E.2d 668, 683-84 & n.4 (Ohio 1997).

21

him guilty.

(Doc. 9, Ex. 9, pp. 2-3) (footnote with citation to quoted Ohio Supreme Court decision omitted).

Although the Ohio Court of Appeals only cited an Ohio Supreme Court decision in overruling petitioner's assignment of error, the state appellate court correctly identified the applicable standard of review established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), as governing the resolution of the constitutional issue. As the state court apparently understood, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

The State is not required under the Due Process Clause to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir.

22

1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher,* 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

Furthermore, as discussed above, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown,* 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson,* but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 1927 (2012); *Anderson v. Trombley,* 451 F. App'x 469, 474-75 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 1152 (2012). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an

23

unreasonable application of *Jackson.*

As the Ohio Court of Appeals stated, in order to establish petitioner's guilt on the four rape counts, the State was required to prove beyond a reasonable doubt that petitioner engaged in sexual conduct with the victims by purposely compelling them to submit by force or threat of force. *See* Ohio Rev. Code § 2907.02(A)(2). As the Ohio Court of Appeals also recognized, under Ohio law, "sexual conduct" includes vaginal intercourse, oral sex, and "the insertion, however slight, of any part of the body . . . into the vaginal or anal opening of another." *See* Ohio Rev. Code § 2907.01(A).

Here, as petitioner himself conceded at trial (*see* Doc. 9, Trial Tr. 698), it is undisputed that petitioner had vaginal intercourse with the victims Nina Miller and Tanea White and digitally penetrated the vaginal cavity of the victim Lisa Flowers as charged in Counts One, Three and Four of the indictment. (*See id.*, Trial Tr. 160-62, 176-78, 186, 305-06, 374, 465, 588). Although petitioner refused to concede that he had engaged in oral sex with Lisa Flowers as charged in Count Two of the indictment (*see id.*, Trial Tr. 699), Flowers testified at trial that petitioner did "insert[] his tongue in [her] vagina." (*Id.*, Trial Tr. 305, 374). As discussed above, in assessing the sufficiency of the evidence, the reviewing court is precluded from reevaluating the credibility of witnesses or reweighing the evidence and must defer to the jury's resolution of the conflicts in the evidence in favor of the prosecution. *Jackson*, 443 U.S. at 318-19 & n.13, 326; *see also Fisher,* 648 F.3d at 450. Therefore, the Ohio Court of Appeals properly determined that the State presented enough evidence to establish beyond a reasonable doubt the "sexual conduct" element of the rape offenses.

Furthermore, although petitioner testified at trial that the sexual acts were consensual, the State presented ample evidence contradicting petitioner's version of events, which was sufficient to establish beyond a reasonable doubt that petitioner purposely compelled the victims to submit

against their wills by the use of force or the threat of force.

First, with respect to the offense charged in Count One, Nina Miller testified that as soon as she walked through the door of petitioner's apartment after reluctantly agreeing to petitioner's persistent entreaty to come in to pick up money he was letting her borrow, petitioner put his hand around her neck, pushed her up against the wall, grabbed her hair and pushed her down to the floor. (*See* Doc. 9, Trial Tr. 158-160). Miller, who said she was "very stunned" and "trying to figure out a way to fight him off," could not recall how petitioner got her clothes off, only that her pants ended up around her leg. (*Id.*, Trial Tr. 160, 162). Miller stated: "As he was choking me with one of his hands, he took his other hand, his other arm and forced my legs open and began penetrating me." (*Id.*, Trial Tr. 160). Miller testified that she eventually "managed to get one of my legs up in order to kick him off of me enough for me to come from up under him and . . . run for the door." (*Id.*, Trial Tr. 161). Miller's testimony regarding the force that petitioner used against her in order to commit the non-consensual sexual act was corroborated by Tina Pfeiffer, a registered nurse who conducted the medical examination of Miller at a local hospital soon after the offense occurred. Pfeiffer testified that during the "head-to-toe examination," she observed a "nail imprint" and a great deal of "ecchymosis and redness" on the victim's neck and "some bruising" on the victim's inner thigh. (*Id.*, Trial Tr. 231). Pfeiffer took photographs, which were also introduced into evidence, showing the "nail imprint" and "swelling" and "redness" around the victim's neck, as well as "bruising" and "redness" on the victim's inner thigh. (*Id.*, Trial Tr. 233, 235-38). Pfeiffer testified that her findings from the medical examination were consistent with Miller's account of what had happened to her. (*Id.*, Trial Tr. 252). Pfeiffer explained:

> [S]he complained of being choked, strangled, and the injuries were there for that. And she talked about how her legs were held apart, and there was bruising there in the inner thigh. She complained of some posterior neck pain, which would hurt anyone if your hair was pulled back or if you were pushed down on the floor that

25

way.

(*Id.*). A rational juror could infer from all this evidence that petitioner purposely compelled Nina Miller to submit by the use of force. Therefore, it was reasonable for the Ohio Court of Appeals to conclude that sufficient evidence was presented to establish petitioner's guilt beyond a reasonable doubt for the rape offense charged in Count One.

With respect to the remaining rape offenses charged in Counts Two through Four involving victims Lisa Flowers and Tanea White, both Flowers and White testified that petitioner not only used force, but threatened to shoot them with a gun he had if they refused to comply with his commands. (*See id.*, Trial Tr. 302, 304, 461, 480).

Specifically, Flowers testified in relevant part:

[H]e commanded me to take my clothes off. And he said if I didn't do it, he was going to shoot me.

I said I can't believe this. I said, don't do this. I said please let me go. He said, take your clothes off. He started cussing at me. He started using foul language, and I started crying because I was like – I just wanted to go. He took my keys, my bag.

. . . I was looking around trying to run, trying to escape, and he had me pinned into a corner where I had no choice but to take my clothes off.

I took my pants off, and I took off my T-shirt. I had a camisole on and I had my panties on. The whole entire time I'm taking off my clothes, I'm begging, Robert, please don't do this, Robert. I'm like, please, just let me go. I told him I won't go to the police, just let me go. I have to get home to my baby.

He told me to shut the F up, and if I made any sound, he was going to kill me.

(*Id.*, Trial Tr. 302-03). Flowers also stated that petitioner took her underwear off, although she struggled and fought with him to keep them on. (*Id.*, Trial Tr. 303-04). At one point, she "kneed" petitioner and asked to use the bathroom to throw up. Petitioner told her "don't make me get this gun." (*Id.*, Trial Tr. 304). Flowers said she made her escape and ran naked out of the apartment when petitioner left the room to "get the gun." (*Id.*, Trial Tr. 304-05, 307, 351).

26

Tanea White testified that petitioner ordered her to take her clothes off and that when she questioned him about it, "he got all serious and mean and he was demanding, and he told me, like, you got to take them off or otherwise." (*Id.*, Trial Tr. 460). White stated that petitioner told her "he had a gun, and that if I don't do what he say," he would "[s]hoot me." (*Id.*, Trial Tr. 461). Although White did not see a gun, she said she believed that petitioner had a gun. (*Id.*). White testified that she complied with what she described as petitioner's "demands" and did what he told her to do because she was "scared." (*See id.*, Trial Tr. 460-63). White also testified that after she took her clothes off and lay in the bed as petitioner directed her to do, she kept her legs "closed" and that petitioner had to "push[] them open" to insert his penis in her vagina. (*Id.*, Trial Tr. 464-65). White said she was crying and telling petitioner to "stop," but he would not stop. (*Id.*, Trial Tr. 465). It appears from the record that at that point in her direct examination, White was having some emotional difficulty in relaying the details of the incident, which led the court to call for a short recess. (*Id.*, Trial Tr. 465-66). When the questioning resumed, White testified that when petitioner "was finished," he became "even more mad," told her to get her clothes on, and went upstairs. (*Id.*, Trial Tr. 468). White said that "as soon as he went up the stairs and [she] thought he was gone," she immediately got dressed, exited the house, and called her best friend and the police. (*Id.*, Trial Tr. 468-69).

Viewing the evidence in the light most favorable to the prosecution and deferring to the jury's resolution of the credibility of the witnesses and their conflicting testimony as required under *Jackson,* 443 U.S. at 318-19 & n.13, 326, a rational juror could find solely on the basis of Flowers' and White's testimony that the two victims did not engage in consensual sexual activity with petitioner and that petitioner instead purposely compelled them to submit to his sexual acts by the use of force or threat of force. Petitioner has contended in his habeas petition that his acquittal on the firearm specifications attached to the three rape counts means that the State

27

failed to prove the "use of force or the threat of force" element of those charged offenses. (*See* Doc. 1, p. 5). However, in contrast to the compulsion element of the underlying rape offenses, the firearm specifications required proof that petitioner actually "had a firearm on or about [his] person or under [his] control." *See* Ohio Rev. Code §§ 2941.141 and 2941.145. Because neither Flowers nor White saw the gun that petitioner threatened to use against them, the verdicts of acquittal on the specifications were warranted. Those verdicts are not inconsistent with the findings of guilt for the underlying rape offenses, however, because petitioner's words and conduct, which included threats to use a gun if Flowers and White refused to comply with his demands, were adequate to establish beyond a reasonable doubt that petitioner used force and the threat of force to compel the two victims, who believed petitioner's statements, to submit against their will to his sexual assaults.

Accordingly, in sum, the undersigned concludes that petitioner's state-law claim challenging the weight of the evidence is not cognizable in this habeas proceeding and that the Ohio Court of Appeals' adjudication of petitioner's constitutional claim challenging the sufficiency of the evidence is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court in *Jackson*. Petitioner has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of the constitutional issue conflicts with the relevant Supreme Court precedents, or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87. Therefore, petitioner is not entitled to relief based on the claims alleged in Ground One of the petition.

## 2. **Ground Two: Sentencing Claims.**

In Ground Two of the petition, petitioner contends that his 40-year sentence is "excessive amounting to cruel and unusual punishment," and that the two rape counts involving the victim

28

Lisa Flowers (Counts Two and Three) should have been merged for sentencing purposes as allied offenses of similar import under Ohio Rev. Code § 2941.25.  (Doc. 1, pp. 6-7).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing petitioner's claims, which were raised in separate assignments of error on direct appeal.  Relying solely on state case-law, the court overruled the assignments of error as follows:

> In his third assignment of error, Williams argues that the trial court erred in sentencing him to terms of imprisonment for both digital penetration and cunnilingus as it related to Flowers.  This assignment is without merit.  The Supreme Court of Ohio has held that oral and digital rape are not allied offenses of similar import because there exists a separate animus for the distinct forms of sexual conduct.  We overrule the third assignment of error.

> In his fourth and fifth assignment[s] of error, Williams contends that the trial court imposed excessive sentences.

> Under *State v. Foster*, [845 N.E.2d 470 (Ohio 2006),] a trial court has full discretion to impose a sentence within the statutory range.  In this case, the trial court did not abuse its discretion.  Williams was a serial rapist who had demonstrated a pattern of ensnaring and violating women, a pattern for which he showed no remorse.  His criminal record included a number of convictions, including two thefts from churches.  And while Williams argues that the sentences constituted cruel and unusual punishment, the sentences were not so disproportionate to the offenses that they would "shock the sense of justice of the community."  We overrule the fourth and fifth assignments of error.

(Doc. 9, Ex. 9, pp. 3-4) (footnotes with citations to state court decisions omitted).

As a threshold matter, this Court is precluded from considering any claim by petitioner that the Ohio Court of Appeals erred in its application and interpretation of Ohio law in holding that the trial court neither violated the state allied offense statute nor otherwise abused its discretion in imposing an aggregate 40-year prison term, consisting of consecutive 10-year terms of imprisonment within the statutory range for each rape offense.  *See* 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *cf. Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim

challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

The consecutive sentences that were imposed did not implicate any concerns under the Sixth Amendment. *See Oregon v. Ice*, 555 U.S. 160, 168-72 (2009). In addition, to the extent petitioner alleges that his sentence constitutes cruel and unusual punishment under the Eighth Amendment, he has not demonstrated that the state appellate court's adjudication of the constitutional issue is contrary to or an unreasonable application of clearly-established federal law as determined by the United States Supreme Court.

It is well-established under the applicable Supreme Court precedents that the Eighth Amendment contains a "narrow proportionality principle," which "'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *See Graham v. Florida*, __ U.S. __, 130 S.Ct. 2011, 2021 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-01 (1991) (Kennedy, J., concurring in part and concurring in judgment)) (internal quotation marks contained within quoted language omitted); *see also United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011) (and Supreme Court cases cited therein). As the Sixth Circuit recently pointed out in a habeas case, the Supreme Court "precedents in this area have not been a model of clarity" regarding the contours of the Eighth Amendment right. *Bonilla v. Lafler*, __ F. App'x __, No. 09-2091, 2012 WL 4748110, at *4 (6th Cir. Oct. 5, 2012) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003)). Furthermore, as the Sixth Circuit noted in another decision involving a federal criminal appeal, "[a] defendant challenging his sentence under the Eighth Amendment has a tremendously difficult burden to meet," given that "[i]n the last century, the Supreme Court has struck down only a handful of non-capital sentences under the Eighth Amendment, and those cases have been egregious in the extreme." *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir.) (holding that a

"ten-year sentence for attempting to entice a minor into sexual relations raises no inference that it is 'grossly disproportionate'" under the Eighth Amendment), *cert. denied*, 131 S.Ct. 2975 (2011). Therefore, the federal habeas petitioner "faces an uphill battle in arguing that there is any clearly established federal law as determined by the Supreme Court in this area of the law," which entitles him to habeas corpus relief. *See Bonilla, supra*, 2012 WL 4748110, at *4.

Here, it was reasonable for the Ohio Court of Appeals to conclude that the imposition of consecutive ten-year terms of imprisonment for each rape offense does not constitute cruel and unusual punishment under the Eighth Amendment. Indeed, as the Supreme Court pointed out in *Graham*, the Supreme Court has "rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs" under a three-strikes recidivist sentencing statute, and has "also upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses, . . . and a sentence of 40 years for possession of marijuana with intent to distribute and distribution of marijuana." *Graham*, 130 S.Ct. at 2021-22 (citing *Ewing v. California*, 538 U.S. 11 (2003); *Lockyer v. Andrade,* 538 U.S. 63 (2003); *Rummel v. Estelle*, 445 U.S. 263 (1980); *Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam)). The Supreme Court cases cited in *Graham* all posed much closer questions of proportionality between crime and sentence than the case-at-hand, involving separate ten-year sentences within the statutory range for four violent felonies. Therefore, petitioner has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of the constitutional issue conflicts with the relevant Supreme Court precedents, or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87.

Finally, petitioner is unable to prevail on any claim that the trial court's failure to merge his rape convictions as allied offenses of similar import constitutes a violation of the Fifth

Amendment's Double Jeopardy Clause. The Double Jeopardy Clause protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). The protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499; *see also Palmer v. Haviland,* 273 F. App'x 480, 484 (6th Cir. 2008) (unlike other double jeopardy protections prohibiting re-prosecution for the same offense, "the multiple punishments category of double jeopardy is primarily one of legislative intent").

In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *see also Volpe v. Trim,* 708 F.3d 688, 696 (6th Cir. 2013); *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989). Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Volpe,* 708 F.3d at 697 (and cases cited therein); *Banner,* 886 F.2d at 780. *Accord Palmer,* 273 F. App'x at 486 (on federal habeas review, "[w]e cannot independently apply typical rules of statutory construction, including the

32

*Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent"). A state legislature may create substantive crimes and punishments that overlap to some degree without violating the Double Jeopardy Clause. Therefore, "[e]ven if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Volpe,* 708 F.3d at 696-97 (quoting *Johnson,* 467 U.S. at 499 n.8).

In Ohio, the legislature's intent in the multiple punishment area may be discerned from Ohio Rev. Code § 2941.25, which was enacted "to prevent 'shotgun' convictions" or, in other words, "multiple findings of guilt and corresponding punishments . . . for closely related offenses arising from the same occurrence." *See State v. Johnson*, 942 N.E.2d 1061, 1064-65 & n.2, 1069 (Ohio 2010) (citing *State v. Botta*, 271 N.E.2d 776 (Ohio 1971), and *State v. Logan*, 397 N.E.2d 1345 (Ohio 1979), and quoting Legislative Service Commission comments to § 2941); *see also Volpe,* 708 F.3d at 697. *Cf. State v. Brown*, 895 N.E.2d 149, 153 (Ohio 2008) (pointing out that the standards set forth in Ohio's multiple-count statute "answered both the constitutional and state statutory inquiries regarding the General Assembly's intent to permit cumulative punishments for the same conduct"). The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25. The statutory provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from the same incident if the offenses (1)

are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus. *Brown*, 895 N.E.2d at 153.

In this case, petitioner contends he was given multiple punishments for the same offense under Ohio's allied offense statute because his convictions and consecutive sentences on Counts Two and Three of the indictment stemmed from one incident involving the victim Lisa Flowers. However, as the Ohio Court of Appeals emphasized in affirming the trial court's judgment, the Ohio Supreme Court has expressly held that different, distinct types of sexual acts, even when they occur during the course of a single sexual encounter, are not allied offenses, but rather constitute separate crimes committed with separate animus for which the offender may be separately convicted and sentenced. *See State v. Nicholas*, 613 N.E.2d 225, 228-29 (Ohio 1993) (per curiam) (holding in a case where the defendant was charged with "three separate crimes involving distinct sexual activity"—i.e., vaginal intercourse, cunnilingus, and digital penetration of the vaginal cavity—that each offense constituted a "separate crime with a separate animus" and thus are not allied offenses of similar import under Ohio Rev. Code § 2941.25). The holding in *Nicholas* remains in effect and continues to be followed by the Ohio courts in analogous cases. *See, e.g., State v. Edwards*, No. WD-11-078, 2013 WL 594319, at *3-4 (Ohio Ct. App. Feb. 15, 2013); *State v. Jillson*, No. C-110430, 2012 WL 917166, at *2-3 (Ohio Ct. App. Mar. 16, 2012); *State v. Drummonds*, No. C-110011, 2011 WL 5620993, at *1-2 (Ohio Ct. App. Nov. 18, 2011). *Cf. State v. Gonzalez*, 952 N.E.2d 502, 510 (Ohio Ct. App.) (in rejecting a claim that four rape counts "constituted one act of sexual conduct [that] should have been merged into a single conviction," the court held that when the defendant "took his five-year-old niece to an unoccupied bedroom" and "barricaded the door," he proceeded to commit four separate and distinct offenses with separate animus—i.e., fellatio, cunnilingus, insertion of object in the victim's vagina, and insertion of object in the victim's rectum), *appeal dismissed*, 949 N.E.2d 44

(Ohio 2011). This Court is bound by and must defer to the state courts' construction of the Ohio statute. *See Hunter*, 459 U.S. at 368; *see also Johnson*, 467 U.S. at 499; *Brown*, 432 U.S. at 167; *O'Brien*, 414 U.S. at 531; *Volpe*, 708 F.3d at 697 (and cases cited therein).

Given the Ohio courts' interpretation of the state statute reflecting the Ohio legislature's intent in the multiple punishment area, it appears clear that the legislature intended to authorize cumulative punishments for rape when the conduct involves separate and distinct types of sexual activity committed during the course of a single encounter, such as were involved in this case. Therefore, this Court's inquiry is at an end. *See Johnson*, 467 U.S. at 499 n.8; *Volpe*, 708 F.3d at 696-97. In any event, the undersigned concludes that the Ohio Court of Appeals' adjudication of the double jeopardy issue is neither contrary to nor an unreasonable application of Supreme Court precedents governing the resolution of petitioner's constitutional claim. *See Hunter*, 459 U.S. at 368; (1974)); *see also Johnson*, 467 U.S. at 499; *Brown*, 432 U.S. at 167; *O'Brien*, 414 U.S. at 531.

Accordingly, in sum, petitioner has not demonstrated that he is entitled to relief based on the claims alleged in Ground Two of the petition challenging his aggregate 40-year sentence for four separate rape offenses.

**3. Ground Three: Ineffective Assistance of Trial Counsel.**

In Ground Three of the petition, petitioner contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel by his trial attorney, who acknowledged for the first time at the sentencing hearing that petitioner "clearly . . . suffers some type of mental disorder," yet allowed petitioner "to testify at the trial without some sort of mental evaluation" and "failed to offer any sort of substantive mitigation" at sentencing based on petitioner's mental condition. (Doc. 1, pp. 9-10; *see also* Doc. 9, Trial Tr. 799).

The Ohio Court of Appeals was the only state court to issue a reasoned decision

(Ohio 2011). This Court is bound by and must defer to the state courts' construction of the Ohio statute. *See Hunter,* 459 U.S. at 368; *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *O'Brien,* 414 U.S. at 531; *Volpe,* 708 F.3d at 697 (and cases cited therein).

Given the Ohio courts' interpretation of the state statute reflecting the Ohio legislature's intent in the multiple punishment area, it appears clear that the legislature intended to authorize cumulative punishments for rape when the conduct involves separate and distinct types of sexual activity committed during the course of a single encounter, such as were involved in this case. Therefore, this Court's inquiry is at an end. *See Johnson,* 467 U.S. at 499 n.8; *Volpe,* 708 F.3d at 696-97. In any event, the undersigned concludes that the Ohio Court of Appeals' adjudication of the double jeopardy issue is neither contrary to nor an unreasonable application of Supreme Court precedents governing the resolution of petitioner's constitutional claim. *See Hunter,* 459 U.S. at 368; (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *O'Brien,* 414 U.S. at 531.

Accordingly, in sum, petitioner has not demonstrated that he is entitled to relief based on the claims alleged in Ground Two of the petition challenging his aggregate 40-year sentence for four separate rape offenses.

**3. Ground Three:  Ineffective Assistance of Trial Counsel.**

In Ground Three of the petition, petitioner contends that he was deprived of his Sixth Amendment right to the effective assistance of counsel by his trial attorney, who acknowledged for the first time at the sentencing hearing that petitioner "clearly . . . suffers some type of mental disorder," yet allowed petitioner "to testify at the trial without some sort of mental evaluation" and "failed to offer any sort of substantive mitigation" at sentencing based on petitioner's mental condition. (Doc. 1, pp. 9-10; *see also* Doc. 9, Trial Tr. 799).

The Ohio Court of Appeals was the only state court to issue a reasoned decision

addressing the merits of petitioner's claim, which was raised as his sixth assignment of error on

direct appeal. Citing the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668

(1984), the state appellate court overruled the assignment of error, reasoning in relevant part as

follows:

> To establish ineffective assistance of counsel, the defendant must demonstrate
> that counsel's performance fell below an objective standard of reasonable
> performance and that prejudice arose from counsel's performance.
>
> In this case, Williams has failed to demonstrate that his attorney was ineffective.
> The presentence investigation revealed no psychological disorders, and there is
> nothing in the record, other than the bare assertions of Williams's attorney and his
> family members, that would indicate mental illness. As for mitigation, Williams
> has not suggested any factors that would have carried significant weight in light
> of the seriousness of the offenses.

(Doc. 9, Ex. 9, pp. 4-5) (footnote with citations to *Strickland* and a state supreme court case

omitted).

The Ohio Court of Appeals correctly identified the applicable two-part standard

established by the Supreme Court in *Strickland* as governing the resolution of petitioner's Sixth

Amendment claim. As the state court recognized, to establish a *Strickland* violation, petitioner

must demonstrate both (1) his trial attorney made such serious errors that he was not functioning

as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance

prejudiced the defense. *See Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, it must be shown that counsel's representation

fell below an objective standard of reasonableness based on all the circumstances surrounding

the case. *Id.* at 688. In determining whether or not counsel's performance was deficient, the

Court must indulge a strong presumption that the challenged conduct fell within the wide range

of reasonable professional assistance. *Id.* at 689. To satisfy the second "prejudice" prong of the

*Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his

counsel's errors, the result of the trial would have been different. *See id.* at 694. Petitioner has

met his burden if he shows that the result of the proceeding would "reasonably likely have been different absent the errors." *Id.* at 695. The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

Here, the Ohio Court of Appeals reasonably determined that no showing had been made to establish that counsel's challenged conduct amounted to ineffective assistance under *Strickland.* First, it appears that contrary to petitioner's contention, petitioner's trial counsel did bring up the issue of petitioner's mental condition prior to trial by filing a suggestion of incompetence and a plea of not guilty by reason of insanity on petitioner's behalf. (*See* Doc. 9, Exs. 2-3). However, after a psychiatric examination was conducted, petitioner was found competent to stand trial. (*See id.*, Exs. 4-5). It also appears from the record that petitioner's counsel did argue "by way of mitigation" at sentencing that "it has been brought to my attention by family members of Mr. Williams, and also in my own professional judgment, that clearly he suffers from some type of mental disorder." (*See id.*, Trial Tr. 799). In response, the trial court pointed out that the presentence investigation revealed "no history of psychiatric or psychological counseling." (*Id.,* Trial Tr. 800).

As the Ohio appellate court reasonably found, the record is devoid of any evidence showing that petitioner suffered from a specific mental disorder, which could have served to mitigate his sentence and should have been investigated more thoroughly before petitioner was permitted to testify in his own defense at trial. The few vague references pertaining to petitioner's "mental disorder" that were made by counsel and petitioner's parents at the sentencing hearing are simply inadequate to suggest that counsel either acted unreasonably or

prejudiced the defense by failing to more aggressively investigate or pursue the issue of petitioner's mental condition prior to trial and sentencing. (*See id.*, Trial Tr. 799-802). As the Sixth Circuit stated in an analogous case, the petitioner "cannot show deficient performance or prejudice . . . if [he] does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748-49 (6th Cir. 2002) (citing *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997); *Martin v. Mitchell*, 280 F.3d 594, 608 (6th Cir. 2002)). In the absence of any such evidence in the record, it was reasonable for the Ohio Court of Appeals to conclude that counsel's challenged conduct was not deficient under the first prong of the *Strickland* test and did not prejudicially affect the reliability of the trial's outcome under the second prong of the *Strickland* test.

Accordingly, in sum, petitioner has not demonstrated that he is entitled to relief based on the merits of the ineffective assistance of trial counsel claim alleged in Ground Three of the petition. He has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of the Sixth Amendment issue is contrary to *Strickland*, or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87. Therefore, Ground Three should be denied with prejudice.

**4. Ground Four: Ineffective Assistance of Appellate Counsel.**

In Ground Four of the petition, petitioner alleges that he was also deprived of his Sixth Amendment right to the effective assistance of counsel on direct appeal because his appellate counsel failed to argue as an assignment of error that petitioner's trial counsel was ineffective for failing to request a severance of the rape charge contained in Count 4 of the indictment, which stemmed from an incident occurring in 2008, from the other rape charges, which stemmed from incidents occurring four years earlier in 2004. (Doc. 1, p. 11). Petitioner contends that by failing

to move for a severance of the charges, his trial counsel effectively permitted the prosecution to "bootstrap" the counts "in order to use the stronger case of Count Four to convince the jury to convict on Counts One, Two and Three as well." (*Id.*, p. 12).

Petitioner raised the claim to the state courts in his application for reopening of the direct appeal. (*See* Doc. 9, Ex. 28). The Ohio Court of Appeals, which was the only state court to issue any type of reasoned decision in that matter, summarily overruled the reopening application, stating only that "the appellant has failed to demonstrate a genuine issue that he was deprived of the effective assistance of counsel on appeal." (*See id.*, Ex. 30).

The two-prong *Strickland* standard discussed above with respect to the ineffective assistance of trial counsel claim alleged in Ground Three of the petition also applies to petitioner's ineffective assistance of appellate counsel claim. *See Valentine v. United States*, 488 F.3d 325, 338 (6th Cir. 2007). In the appellate context, it is well-settled that counsel is not ineffective under the first prong of the *Strickland* test for failing to raise every non-frivolous argument. *Carter v. Wolfenbarger,* 347 F. App'x 205, 211 (6th Cir. 2009) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983)); *see also Friday v. Pitcher,* 99 F. App'x 568, 575 (6th Cir. 2004) (quoting *Buell v. Mitchell,* 274 F.3d 337, 352 (6th Cir. 2001)) ("appellate counsel was not deficient for failing to raise on direct appeal nonfrivolous claims after deciding as a matter of professional judgment not to raise those points"). Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Barnes,* 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001). Although it is possible to satisfy the first prong of the *Strickland* test based on a claim challenging counsel's failure to raise a particular issue on direct appeal, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the

39

presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 F. App'x 375, 379 (6th Cir. 2004). "If there is a reasonable probability that [the petitioner] would have prevailed on appeal had the claim been raised," the Court then must consider "whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Carter,* 347 F. App'x at 211. The inquiry involves an assessment of whether the underlying ineffective assistance of trial counsel claim "had a reasonable probability of success." *Valentine,* 488 F.3d at 338; *see also Carter,* 347 F. App'x at 211 ("In short, as goes [the petitioner's] trial IAC claim, so goes his appellate IAC claim.").

In the instant case, the undersigned concludes that the Ohio Court of Appeals' summary adjudication of petitioner's claim was not contrary to or an unreasonable application of *Strickland* because it is unlikely that petitioner's underlying ineffective assistance of trial counsel claim would have succeeded if his appellate counsel had raised it as an assignment of error on direct appeal.

As a matter of state law, Ohio R. Crim. P. 8(A) permits the joinder of two or more offenses in the same indictment "if the offenses charged . . . are of the same or similar character." In fact, as the Ohio Supreme Court has reiterated in numerous decisions, the law in Ohio "favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged 'are of same or similar character.'" *State v. Fry*, 926 N.E.2d 1239, 1275 (Ohio 2010) (quoting *State v. Lott*, 555 N.E.2d 293, 298 (Ohio 1990), in turn quoting *State v. Torres*, 421 N.E.2d 1288, 1290 (Ohio 1981)); *see also State v. Diar*, 900 N.E.2d 565, 586 (Ohio 2008) (same); *State v. Skatzes*, 819 N.E.2d 215, 234 (Ohio 2004) (same); *State v. Coley*, 754 N.E.2d 1129, 1139 (Ohio 2001) (same). As the state supreme court explained in *Torres*, 421 N.E.2d at 1290, "joinder and the avoidance

of multiple trials is favored for many reasons, among which are conserving time and expense, diminishing the inconvenience to witnesses, and minimizing the possibility of incongruous results in successive trials before different juries."

Under Ohio R. Crim. P. 14, the trial court must order the severance of counts for separate trial "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses."  However, the defendant bears the burden of proving prejudice. *Fry*, 926 N.E.2d at 1275 (citing *Torres*, 421 N.E.2d at 1290).  Moreover, the defendant cannot prevail on any claim of prejudice from joinder to the extent such a claim may be rebutted by the State in two ways:  (1) if evidence of the joined offenses would be admissible as "other acts" under Evid. R. 404(B) in separate trials on the severed charges; *or* (2) if it is shown that "evidence of each crime joined at trial is simple and direct." *Id.*; *see also Torres*, 421 N.E.2d at 1291 ("Joinder may be prejudicial when the offenses are unrelated and the evidence as to each is very weak, . . . but it is otherwise when the evidence is direct and uncomplicated and can reasonably be separated as to each offense."). *Cf. Johnson v. Bagley*, No. 1:02cv220, 2006 WL 5388021, at *12 (S.D. Ohio Apr. 24, 2006) (Graham, J.), *aff'd on other grounds*, 544 F.3d 592 (6th Cir. 2008).

In this case, it is highly unlikely that the trial court would have granted any request lodged by petitioner's trial counsel to sever the charges.  First, a strong argument can be made that if separate trials had been ordered, the State would have been permitted to introduce evidence of the joined offenses as "other acts" under Ohio R. Evid. 404(B).  Under that rule, evidence of other crimes, wrongs or acts is admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Here, although the 2008 offense charged in Count 4 was separated in time from the 2004 offenses charged in Counts 1 through 3 of the indictment, the crimes all involved sufficiently similar characteristics to constitute admissible evidence regarding petitioner's intent, preparation and plan with respect to

41

each offense—*i.e.*, petitioner met each victim in the same geographic area and pursued the same *modus operandi* of engaging in friendly, asexual conversations with the victims to gain their trust before luring them to his residence, where his behavior changed dramatically and the violent rape offenses took place. *Cf. Sherley v. Parker*, No. 99-5535, 2000 WL 1141425, at \*5-6 (6th Cir. Aug. 8, 2000) (holding that failure to sever charges did not amount to a constitutional violation in case where the crimes were related in "character, time and circumstance" to the extent that they "were committed within one month of each other in the same geographic area with the same *modus operandi* and were perpetrated against similar victims"); *Lott*, 555 N.E.2d at 298 (affirming joinder of 1983 aggravated burglary and petty theft charges with 1986 charges as "similar offenses" under Ohio R. Crim. P. 8(A)). In any event, the evidence presented at trial by the State was simple and direct, and could reasonably be separated as to each offense. As in *Torres* and as discussed above in addressing the sufficiency of evidence claim alleged in Ground One of the petition, the evidence presented to establish petitioner's guilt in this case was "amply sufficient to sustain each verdict, whether or not the [offenses] were tried together." *See Torres*, 421 N.E.2d at 1291. It was certainly reasonable for the Ohio Court of Appeals to conclude that the offenses were properly joined in accordance with state law and, therefore, the failure of petitioner's trial counsel to file a motion for severance did not constitute ineffective assistance within the meaning of *Strickland*.

Accordingly, in sum, because it is unlikely that petitioner's underlying ineffective assistance of trial counsel claim would have succeeded if petitioner's appellate counsel had raised it as an assignment of error on direct appeal, petitioner is not entitled to habeas relief based on his claim in Ground Four of the petition challenging the effectiveness of his appellate counsel. In any event, upon review of the entire record, it does not appear that the Ohio Court of Appeals' adjudication of the issue is either contrary to or an unreasonable application of clearly

established Supreme Court precedents.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Five, which this Court has concluded is waived and thus procedurally barred from review, because under the first of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[5] A certificate of appealability also should not issue with respect to the non-defaulted claims alleged in Grounds One through Four of the petition in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 5/8/13

Karen L. Litkovitz
United States Magistrate Judge

---

[5]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the defaulted ground for relief. *See Slack,* 529 U.S. at 484.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERT WILLIAMS,                                          Case No. 1:12-cv-56
       Petitioner

      vs                                                 Bertelsman, J.
                                                         Litkovitz, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
       Respondent

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robert Williams # 615-740
Lebanon Corr. Inst.
PO Box 56
Lebanon, OH 45036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:     ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7002 3150 0000 8389 9579

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540